UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCUS MUKAI, *et al.*,

    Plaintiffs,

v.

JAY A. FUHR, *et al.*,

    Defendants.

CASE NO. C04-1446RSM

ORDER GRANTING MOTION TO DISMISS PARTY

## I. INTRODUCTION

This matter comes before the Court on defendant Shelby County Community Services' ("SCCS") Motion to Dismiss all of plaintiffs' claims against it.[1] (Case No. C04-2390RSM, Dkt. #9). Defendant asks the Court to dismiss plaintiffs' claims based on lack of jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

Plaintiff answers that defendant SCCS is subject to personal jurisdiction under Bankruptcy Rule 7004(b), which provides for service within the United States by first class mail postage prepaid. (Dkt. #13 at 8). Plaintiff further answers that venue is proper in this Court because plaintiffs' principal place of business is in Washington and the related bankruptcy proceeding has

---

[1] The Court notes that defendant filed this motion prior to the Court's consolidation of Case Nos. C04-1446RSM and C04-2390RSM. The motion was transferred to the undersigned District Judge at the same time as Case No. C04-2390RSM. Unless otherwise noted, all docket numbers cited in this Order refer to documents found at the Court's electronic docket sheet for Case No. C04-2390RSM.

ORDER
PAGE - 1

been maintained in the Western District of Washington. (Dkt. #13 at 9).

Having considered defendant's motion (Dkt. #9), plaintiff's response (Dkt. #13), defendant's reply (Dkt. #17), and the remainder of the record, the Court hereby GRANTS defendant's motion.

## II. DISCUSSION

### A. Background

This case has a somewhat complicated background, beginning with the history of the relationship between the parties. On or about July 28, 2000, defendant AG Designs & Associates, Inc. ("AG"),[2] acting through its President, defendant Allen Herrington, entered into a Dealership Agreement with plaintiff Sage Electronics and Technology, Inc.[3] AG procured Sage to assist in the engineering and development of a rechargeable trainman lantern for sale to the Burlington Northern Santa Fe railroad, Union Pacific Railroad, and others. AG then apparently agreed with defendant SCCS[4], that AG would receive the orders from the railroads and others, and SCCS would purchase batteries and chargers from Sage and assemble the trainman lanterns. Sage alleges that AG also handled negotiations with Sage on behalf of SCCS.

On or about October 24, 2001, SCCS issued a purchase order to Sage for 10,000 batteries and 10,000 chargers. However, upon the first delivery of batteries and chargers, SCCS determined that they were nonconforming goods, and refused to accept delivery.

Sage alleges that Mr. Herrington then demanded that Sage modify the batteries and chargers. Sage asserts that it believed the batteries and chargers had conformed to the

---

[2] AG is a Washington corporation, with its principal place of business in Greenbank, WA.

[3] Under the Debtors' Chapter 11 Plan of Reorganization, Sage Electronics and Technology, Inc., Pulse Power, Inc., and Sage Electronics, Inc., were consolidated into one entity under the name of Sage Electronics and Technology, Inc. These consolidated debtors will be referred to as "Sage" within this Order. Sage is also a Washington corporation.

[4] SCCS is an Illinois corporation, with its principal place of business in Shelbyville, IL.

ORDER
PAGE - 2

specifications provided by Mr. Herrington, but agreed to make substantial "upgrades" to the products. The upgraded product was tendered to AG and SCCS shortly before Sage filed for bankruptcy, and for some time thereafter. AG apparently informed Sage that it was testing the upgraded product, and was also attempting to obtain acceptance from the railroads. On May 21, 2002, Sage filed for bankruptcy, based in part on the expenses it incurred in producing and modifying the batteries and chargers.

In the meantime, during the weeks prior to filing for bankruptcy, Sage alleges that AG, Mr. Herrington, and defendant Andrew Cook, an employee of Sage, stole 15 completed, upgraded circuit boards and production drawings from Sage, with full knowledge and support of defendant Marcus Mukai, another employee, officer and director of Sage. Apparently Sage did not learn of the alleged theft until after filing for bankruptcy. Sage alleges that during the weeks following the bankruptcy filing, AG, Mr. Herrington and Mr. Cook, made derivative drawings, had derivative circuit boards manufactured naming AG as the copyright owner, and secured another person, CK Hwa, to cut the components from Sage's upgraded circuit boards and install those components in the derivative circuit boards. Mr. Cook has testified that he delivered the circuit boards to Mr. Hwa and Mr. Herrington at the request of Mr. Herrington, to protect Mr. Herrington and AG in the event that Sage filed for Chapter 7 bankruptcy.

Sage alleges that Mr. Mukai, Mr. Herrington, AG and SCCS then worked together to obtain approval of the derivative circuit board from the railroads, began manufacturing the circuit boards and trainman lanterns, and acted in concert to sell the lanterns to the railroads. It is Sage's belief that Burlington Northern is now purchasing the lanterns from AG and SCCS.

In the meantime, Mr. Herrington apparently indicated to Sage that the upgraded circuit boards were acceptable to meet the requirements of the SCCS purchase order, and began negotiating who would bear the costs of the upgrades. Between 2000 and 2002, Sage interacted mostly with Mr. Herrington. However, Sage alleges that it also had both e-mail communication and

ORDER
PAGE - 3

telephone communication directly with SCCS about a number of different issues pertaining to the batteries and chargers.

On September 30, 2002, AG filed a Proof of Claim in the amount of $140,450.00 in the Sage bankruptcy proceeding. The claim is based on the "defective goods" delivered in response to the SCCS October 24, purchase order. As part of this adversary proceeding, Sage has objected to that claim.

On or about September 24, 2003, Jay Fuhr, President of Sage, discovered that AG was marketing a trainman lantern on its website. Mr. Fuhr subsequently discovered that Burlington Northern was purchasing those lanterns. Sage, through an intermediary, then purchased one of the lanterns, and alleges that some of its components are derivative of Sage components. The lantern was shipped from SCCS in Illinois to Washington.

On May 18, 2004, Sage filed an adversary proceeding against SCCS as part of the Chapter 11 bankruptcy proceeding in the United Stated Bankruptcy Court for the Western District of Washington, which had been filed on May 21, 2002, by plaintiff Sage Electronics. The adversary proceeding alleges, *inter alia*, misrepresentation and fraud, breach of contract, unfair competition, conversion, theft of trade secrets, intentional interference with contractual relations, negligence, reverse passing off, patent infringement and violation of Washington's Consumer Protection Act. The adversary proceeding was initially referred to the Bankruptcy Court for resolution; however, on September 24, 2004, the parties stipulated to a withdrawal of the reference, and this Court agreed to maintain the proceeding.

On June 22, 2004, Mr. Mukai filed a suit against Mr. Fuhr, asking for minimum wage and overtime compensation under the Fair Labor Standards Act, and the Washington Minimum Wage Act. (C04-1446RSM, Dkt. #1). Mr. Mukai also alleges discrimination based on national origin. Mr. Mukai has also raised these claims in response to Sage's adversary complaint.

Sage's adversary action was initially assigned to the Honorable Marsha J. Pechman, United

States District Judge. The parties subsequently moved to transfer and consolidate that case with Mr. Mukai's labor case. On March 14, 2005, Judge Pechman granted the parties' motion, and transferred the Sage adversary proceeding to the undersigned District Judge as related to Mr. Mukai's labor action. On March 30, 2005, the undersigned District Judge ordered the two cases consolidated.

The Court now addresses SCCS's motion to dismiss party for lack of jurisdiction, improper venue and failure to state a claim upon which relief may be granted, along with its request for attorney's fees and costs.

### B. Personal Jurisdiction

Defendant SCCS has moved to dismiss for lack of jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-801 (9th Cir. 2004); *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). When the motion is based on written materials, "the plaintiff need only make a *prima facie* showing of jurisdictional facts." *Id.* The plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); however, uncontroverted allegations in the complaint must be taken as true. *See Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (explaining that "[b]ecause the *prima facie* jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events"); *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

In Washington, a court may exercise general personal jurisdiction over a non-resident defendant when it has engaged in substantial or continuous and systematic business activities in the forum state. *CTVC v. Sinawatra*, 82 Wn. App. 699, 708-09 (1996). Specific personal jurisdiction may be exercised over a foreign defendant when (1) the foreign defendant acted or consummated a

transaction in the forum by which he purposefully availed himself of the privilege of conducting business in the forum; (2) the claim arises from defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995); *CTVC*, 82 Wn. App. at 709-10; *Kysar v. Lambert*, 76 Wn. App. 470, 487-88 (1995). If any one of these three requirements is not satisfied, the Court may not exercise jurisdiction over the defendant. *Omeluk*, 52 F.3d at 269.

SCCS first argues that general jurisdiction does not exist because Sage has made express claims based on the October purchase order as a basis for jurisdiction. (Dkt. #9). SCCS then argues that specific jurisdiction does not apply because SCCS does not have sufficient contacts with Washington, and one contract, in the form of a purchase order, is not enough to confer specific jurisdiction. (Dkt. #9 at 4). SCCS also presents arguments as to why specific jurisdiction does not exist for each of Sage's claims raised in the Complaint. (Dkt. #9 at 4-24). Sage responds that personal jurisdiction is conferred by Bankruptcy Rule 7004(b); thus, no minimum contacts with the state of Washington need be proven. (Dkt. #13 at 8). Sage also argues that venue is proper in this District. (Dkt. #13 at 9). For the following reasons, the Court disagrees with Sage.

In *In re Etalco, Inc.*, 273 B.R. 211 (9th Cir. BAP 2001), the Ninth Circuit Bankruptcy Appellate Panel examined whether nationwide service under Bankruptcy Rule 7004(b) could apply to cases where claims in favor of a bankrupt debtor arise out of post-bankruptcy petition activity. After examining the legislative intent behind federal venue rules, the Panel determined that in such cases, the debtor may not avail itself of nationwide service under Bankruptcy Rule 7004(b), and "the inquiry into personal jurisdiction must focus on the Due Process Clause of the Fourteenth Amendment instead of the Fifth Amendment." *In re Etalco, Inc.*, 273 B.R. at 220.

Sage's own allegations make clear that the essence of its Complaint arises from post-bankruptcy petition activity. Sage alleges misappropriation of trade secrets, manufacturing of the trainman lanterns using proprietary information, and sale of the derivative products all after the

ORDER
PAGE - 6

bankruptcy petition had been filed. While Sage alleges that the theft of circuit boards occurred prior to the filing of the bankruptcy petition, SCCS was not named in that allegation. Nor did Sage allege that SCCS had any knowledge or involvement in that theft. Accordingly, the Court agrees with SCCS that Sage may not rely on nationwide service under Bankruptcy Rule 7004(b) for personal jurisdiction in this case. Thus, the Court turns to SCCS's claim that it lacks sufficient contacts with Washington for this Court to exercise personal jurisdiction. For the following reasons, the Court now finds that minimum contact requirements have not been satisfied.

In Sage's Complaint, the only "act" or "transaction" said to have occurred in Washington directly with SCCS is the submission of a purchase order by SCCS for batteries and chargers. That purchase order involved a finite number of goods, and contained no terms involving continuing obligations between Sage and SCCS. The United States Supreme Court has ruled that the mere existence of such a contract with an out-of-state party cannot alone establish minimum contacts for specific jurisdiction. *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985). Washington courts agree that "[t]he mere existence of a contract with a resident of the forum state does not alone automatically fulfill the 'purposeful' act requirement." *MBM Fisheries v. Bollinger Shipyard*, 60 Wn. App. 414, 423 (1991). In *MBM Fisheries*, the Washington State Court of Appeals noted that

> the entire business transaction, including prior negotiations, contemplated future consequences, the terms of the contract and the parties' actual course of dealing should be evaluated to determine whether the defendant purposefully established minimum contacts by entering into a contract with a resident of the forum state.

*Id.* at 423 (citation omitted).

In the instant case, Sage itself acknowledges that AG did conduct most of the negotiations, and did most of the communicating with Sage. Additionally, the purchase order was transmitted via facsimile from Illinois to Washington, with no prior negotiations between Sage and SCCS, no continuing obligations, and no continuing business relationship between SCCS and Sage. As a result, Sage has not demonstrated that the purchase order is sufficient to establish minimum

ORDER
PAGE - 7

contacts with Washington.

Similarly, Sage cannot rely on AG's contacts with Washington to impute jurisdiction to SCCS. While Sage alleges in the Complaint that AG formed a "joint venture" with SCCS, and conducted negotiations on behalf of SCCS, it points to no specific facts demonstrating any agency relationship between AG and SCCS, or any contract or agreement that AG would act on behalf of SCCS. It does not allege that AG and SCCS had an agreement to jointly produce and sell trainman lanterns, that AG and SCCS shared a common purpose or interest, or that AG and SCCS had equal control over the joint venture. Instead, Sage states that it always understood that AG was acting on behalf of SCCS. As noted above, Sage may not simply "rest on the bare allegations of its complaint." *Amba Marketing Systems, Inc.,* 551 F.2d at 787. Here, both AG and Mr. Herrington have specifically denied that there was any joint venture with SCCS. (Dkt. #3, Attachment 9). Thus, the Court finds that AG's alleged representations and conduct with Sage cannot be imputed to SCCS.

Furthermore, Sage has not demonstrated that the claim against SCCS has arisen from SCCS's forum-related activity. Sage's breach of contract claim arises out of activities occurring in Illinois. The products at issue were shipped to Illinois, and the people at SCCS who handled those products, and made the determination that the products were non-conforming, are located in Illinois. The allegedly improper rejection of the goods also took place in Illinois. Accordingly, the Court finds that Sage has not demonstrated specific personal jurisdiction based on the alleged breach of contract.

Finally, the Court notes that Sage has failed to establish appropriate jurisdiction over its patent claim against SCCS. Federal Circuit law, rather than Ninth Circuit law, governs the determination of personal jurisdiction in patent infringement actions. *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1377-78 (Fed. Cir. 1998); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). The Federal Circuit courtesy rule under which

ORDER
PAGE - 8

1  procedural matters are guided by the law of the regional circuit does not apply where the issue,

2  even if procedural in nature, is "intimately involved in the substance of enforcement of [a] patent

3  right". *Viam Corporation v. Iowa Export-Import Trading Co.*, 84 F. 3d 424, 428 (Fed. Cir. 1996).

4  Again, it is the plaintiff's burden to establish a *prima facie* case of personal jurisdiction by alleging

5  facts that, if true, would support jurisdiction, and upon that showing, the burden is on the defendant

6  to prove the exercise of jurisdiction is unreasonable. *Electronics For Imaging, Inc., v. Coyle*, 340

7  F.3d 1344, 1350 (Fed. Cir. 2003).

8        In order to establish specific personal jurisdiction over SCCS, Sage must allege that SCCS

9  is making, using or selling the patented invention in the forum state. Sage has failed to allege such

10 facts. Rather, it alleges that SCCS shipped the product from Illinois to Washington, after AG sold

11 the product to Sage. The Court has already determined that Sage has not sufficiently demonstrated

12 that a joint venture existed between SCCS and AG. Accordingly, Sage also fails to demonstrate

13 specific personal jurisdiction over its patent claim against SCCS.

14       For all of the reasons set forth above, the Court agrees with SCCS that Sage has failed to

15 establish that jurisdiction is appropriate in this District. Accordingly, the Court finds that all of

16 Sage's claims against SCCS must be dismissed without prejudice. However, nothing prevents Sage

17 from pursuing its claims in the appropriate forum. Because the Court finds that it lacks personal

18 jurisdiction over SCCS, and dismisses all of Sage's claims against it, the Court need not address the

19 remaining arguments set forth by SCCS.

20       **C. Reverse Passing Off and Request to Amend Complaint**

21       Sage concedes that it cannot maintain a claim against any of the defendants for reverse

22 passing off, and asks the Court to allow amendment of its Complaint to delete that claim. (Dkt. #13

23 at 16). The Court finds such amendment appropriate, and grants Sage's request.

24       **D. Attorney's Fees and Costs**

25       SCCS requests attorney's fees and costs pursuant to RCW 4.28.185(5), which provides:

26

ORDER
PAGE - 9

> In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorney's fees.

RCW 4.28.185(5). Sage answers that attorney's fees are not appropriate because RCW 4.28.185 applies only to cases where plaintiff has utilized jurisdiction under Washington's long-arm statute, and because RCW 4.28.185 does not apply to investigating, pleading and arguing 12(b)(6) motions. (Dkt. #13 at 19). Sage provides no authority for these contentions. Accordingly, the Court finds that SCCS may recover reasonable attorneys fees and costs, and shall submit a petition for such fees and costs to be noted for consideration in accordance with the Local Rules.

### III. CONCLUSION

Defendant's Motion to Dismiss all of plaintiffs' claims against it (Dkt. #9) is GRANTED. Plaintiff's claims against defendant Shelby County Community Services are DISMISSED, and Shelby County Community Services is DISMISSED as a party to this action.

Plaintiff shall be allowed to file an Amended Complaint <u>no later than 14 days from the date of this Order</u>, deleting its reverse passing off claim against all defendants.

SCCS shall submit a Petition for Fees and Costs to this Court, and shall note the petition for consideration in accordance with the Local Rules.

The Clerk shall forward a copy of this Order to all counsel of record.

DATED this   11   day of April 2005.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 10